UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILLIP BAGLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 6943 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, D. BLACKMAN, ) | |
| J. DELGADO, T. ORTIZ, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Chicago police officers allegedly beat up Plaintiff Phillip Bagley on September 27, 2015, and thereafter arrested him. Two years later, on September 26, 2017, Bagley filed this lawsuit against the City of Chicago (the "City") and Chicago Police Officers Tito Ortiz, Davis, Jackson, and "J. Doe," alleging unreasonable seizure, excessive force, illegal search, denial of medical treatment, and failure to intervene pursuant to 42 U.S.C. § 1983, in addition to seeking indemnification against the City for any judgment entered against the individual Defendants. On January 16, 2018, Bagley filed an amended complaint, naming Chicago Police Officers Jesus Delgado and Daniel Blackman (collectively, the "Defendant Officers"), in addition to Tito Ortiz and the City, as Defendants.[1] The City and the Defendant Officers then moved to dismiss the amended complaint. The Court dismissed Bagley's unreasonable seizure claim but found that, at the pleading stage, it could not determine whether the amended complaint related back to the initial complaint to make his claims against the Defendant Officers timely. Doc. 56. After completing discovery, the City and Defendant Officers have filed a motion for summary

---

[1] Bagley did not perfect service on Ortiz, apparently because no such police officer exists. Because the time for service has long since expired, the Court dismisses Bagley's claims against Ortiz without prejudice. Fed. R. Civ. P. 4(m); *United States v. Ligas*, 549 F.3d 497, 500–01 (7th Cir. 2008).

judgment, reprising their statute of limitations argument and raising other substantive arguments as well. Bagley concedes that Blackman had no personal involvement in the underlying actions, and so the Court enters judgment for Blackman and only addresses the Defendant Officers' arguments as they relate to Delgado. The Court concludes that the principles of relation back apply to make Bagley's claims against Delgado timely. Because Bagley does not offer any argument to support the viability of his unlawful search and denial of medical care claims, the Court enters judgment for Delgado on these claims. The Court also provides Bagley's counsel with notice of its intent to impose monetary sanctions for his repeated failures to comply with the Court's rules and procedures.

## BACKGROUND[2]

On September 27, 2015, the Defendant Officers reported to a call of a large disturbance on the 6400 block of South Lowe Avenue. Delgado observed Bagley drinking and a bulge in his waistband. According to Delgado, as he approached Bagley, Bagley ran. Bagley denies running but acknowledges that Delgado took him into custody. Bagley testified that Delgado beat him and a black male officer kicked him. Delgado admits to punching Bagley in the face. Although Bagley believed the black officer was Blackman, Blackman is Caucasian and was not present when Delgado took Bagley into custody.

After Delgado took Bagley into custody, he took Bagley to a transport wagon. The Defendant Officers did not transport Bagley. Bagley requested medical attention during the

---

[2] Although the Court's summary judgment procedures differ from Local Rule 56.1, Bagley did not participate in drafting a joint statement of material facts. The Court addresses Bagley and his counsel's failure to comply with this Court's rules and procedures in further detail below. For purposes of resolving the motion, the Court considers the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1 and takes these facts in the light most favorable to Bagley, the non-movant. The Court has considered the parties' objections to the statements of fact and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

2

transport to the Seventh District police station. He also asked officers at the station, as well as the lock-up keepers, for medical attention. Officers then transported Bagley to St. Bernard Hospital, where Bagley refused treatment because he first wanted his injuries photographed. As a result, Bagley returned to the station, where officers photographed him and then took him back to St. Bernard for treatment. Thereafter, the State charged Bagley with resisting arrest and he pleaded guilty to this charge on October 27, 2015.

On September 26, 2017, Bagley filed this case against the City and Ortiz, Davis, Jackson, and "J. Doe." Counsel for the City filed their appearances on November 8, 2017, with the City executing a waiver of service on November 16, 2017. After some back and forth between the parties, the City produced the police reports from the incident to Bagley's counsel in mid-December 2017. Bagley then sought leave to file an amended complaint on December 19, 2017, attaching a proposed amended complaint naming the Defendant Officers as well as Ortiz and the City as Defendants. The Court granted Bagley's motion on January 9, 2018, and Bagley filed the amended complaint on January 16, 2018. The Chicago Police Department received service of the amended complaint on February 6, 2018, issuing a memo to the Defendant Officers regarding the complaint on that day. The Defendant Officers received the amended complaint on February 12, 2018. The same counsel representing the City filed an appearance for the Defendant Officers on March 9, 2018.

Bagley testified that he learned Delgado's name on the date of his arrest, but he also claimed only to have learned it from his lawyer after filing this case. He also thought that he heard an officer on the scene call Delgado "Tito," but neither Blackman nor Delgado have gone by "Tito," "Ortiz," or "Tito Ortiz." Bagley acknowledged that no officer attempted to conceal

3

his identity on the day of the arrest, testifying that no officer covered his nametag or took off his badge.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Statute of Limitations

Reprising an argument from the motion to dismiss, Delgado argues that the two-year statute of limitations bars Bagley's claims against him and that Bagley cannot rely on relation back to make them timely. As the Court previously found, Bagley's claims for excessive force, illegal search, denial of medical treatment, and failure to intervene accrued immediately, on

September 27, 2015.  Doc. 56 at 4 (citing *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010)).  Because Bagley filed his amended complaint naming Delgado on January 16, 2018, after the statute of limitations had run, he may proceed on his claims only if the amended complaint relates back to his original complaint pursuant to Federal Rule of Civil Procedure 15(c).  Rule 15(c)(1)(C) provides that a claim asserted against a newly identified defendant relates back if:

> within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Delgado again argues that Bagley's amended complaint should not relate back because Bagley's lack of knowledge and naming of a John Doe defendant does not constitute a mistake.  After the Supreme Court's decision in *Krupski v. Costa Cruciere S.p.A.*, 560 U.S. 538, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010), the focus of the relation back inquiry has shifted away from the plaintiff's to the defendant's knowledge, with the plaintiff's knowledge "relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 548.  In its opinion on the motion to dismiss, this Court indicated it would follow the consensus that had emerged in this district that a plaintiff's lack of knowledge does not preclude relation back.  Doc. 56 at 5–6 (collecting cases).  Rather, *Krupski*'s "defendant-focused analysis applies whether the plaintiff sues the wrong defendant because of a misunderstanding or sues a fictitious defendant because of a lack of knowledge." *Haroon v. Talbott*, No. 16-cv-04720, 2017 WL 4280980, at *7 (N.D. Ill. Sept. 27, 2017).  The Court

5

therefore need not make a specific determination as to whether Bagley mistakenly failed to name Delgado or lacked knowledge as to Delgado's identity.

But Delgado appears to also argue that Bagley deliberately chose not to sue Delgado and instead sued individuals he knew did not inflict his alleged injuries, a choice Delgado argues precludes Bagley from taking advantage of Rule 15(c)(1)(C). *See Krupski*, 560 U.S. at 549 ("[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."). But here, the evidence does not suggest Bagley made such a deliberate choice while fully apprised of the circumstances. Bagley testified that he knew Delgado's name at the time of the incident, but then quickly clarified that he only learned Delgado's name after his counsel informed him of it, believing instead that Delgado's name was Tito Ortiz. Although the evidence indicates that Delgado never went by such a name, the confusion surrounding the names of the officers, coupled with Bagley's attempts to learn the names of the officers soon after filing his complaint, does not indicate that Bagley made a deliberate choice not to initially sue Delgado despite fully knowing his name and the extent of his involvement in the incident.

Thus, the Court considers whether Delgado knew or should have known during the Rule 4(m) period that, but for a mistake on Bagley's part, he would have been named in the suit, and whether he is prejudiced in defending the merits of the case if the Court allows for relation back.[3] *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011).

---

[3] Despite the Court noting the fallacy of the argument in ruling on the motion to dismiss, *see* Doc. 56 at 5 n.5, Delgado again argues that, for Bagley's amended complaint to relate back, he needed to file his amended complaint within ninety days of his original complaint, which he did not do. But Rule 15(c)(1)(C) only specifies that the party against whom Bagley seeks to proceed need have received notice of the action within that ninety-day period, not that the amendment have occurred during that time. *See Krupski*, 560 U.S. at 554 n.5 ("[W]e reject respondent's suggestion that Rule 15(c) requires a plaintiff to

Delgado did not have actual knowledge of this suit until February 12, 2018, when he received a copy of the amended complaint. But that does not end the inquiry, for the Court must also consider whether Delgado should have known that he would have been named in the suit during the Rule 4(m) period, which expired on December 26, 2017. During this time, on December 19, 2017, Bagley filed a motion for leave to file an amended complaint and attached the proposed amended complaint that named Delgado as a defendant. Although the City's counsel did not represent Delgado at that time, the alignment of interests between Delgado and his employer, initially named in the suit, further supports a finding of constructive notice at that time. The Court did not address the motion for leave to amend until January 9, 2018, but the fact that Bagley named Delgado in this filing, which counsel for the City received within the Rule 4(m) period, suffices to demonstrate that Delgado should have known within that time that, but for a mistake, Bagley would have initially filed the suit against him.[4]

Alternatively, Delgado contends that Bagley's failure to diligently amend his complaint to name him as a defendant has prejudiced his defense. Aside from "inform[ing] the prospective

---

move to amend her complaint or to file and serve an amended complaint within the Rule 4(m) period. Rule 15(c)(1)(C)(i) simply requires that the prospective defendant has received sufficient 'notice of the action' within the Rule 4(m) period that he will not be prejudiced in defending the case on the merits."). Because Delgado misreads this aspect of Rule 15(c)(1)(C), the Court declines to address this argument further and instead considers whether Delgado knew or should have known of the lawsuit within the ninety-day period.

[4] The amended complaint also could relate back to the filing of the original complaint under Illinois law pursuant to Rule 15(c)(1)(A). Bagley argues that the law of relation back under Illinois law allows his claim to proceed, focusing on the Illinois interpretation of mistake. Although the Court finds such a distinction immaterial, as discussed above, Illinois does provide for a more generous time limit for when the defendant receives notice of a case. *See Fonza v. Will County Jail*, No. 16-cv-10396, 2018 WL 264197, at *2–3 (N.D. Ill. Jan. 2, 2018) (criteria for showing notice under Illinois rules of relation back does not include a specific time limitation but rather only requires the plaintiff to demonstrate reasonable diligence in effectuating service). Bagley effectuated service of the amended complaint approximately twenty weeks after filing his original complaint, a period of time that Illinois courts have found to satisfy the reasonable diligence standard. *See id.* at *3 (collecting cases allowing for seven- and thirteen-month delays).

defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity,'" Bagley's diligence plays no role in the question of whether an amendment relates back. *Krupski*, 560 U.S. at 553–54. Delgado claims that allowing relation back would cause him "extreme and irreparable prejudice, including record retention, memory loss, difficulty locating witnesses, and limited documentation to assist with memory of the incidents that occurred." Doc. 83 at 9. Only a short period of time elapsed between the initial filing of suit and Delgado's addition as a defendant. And the parties completed discovery without raising any issues concerning record retention, limited documentation, or difficulty locating witnesses. Moreover, the submitted records suggest that Delgado can sufficiently recall the incident and adequately defend himself against Bagley's claims, negating any inference of prejudice. Taking into account the totality of the circumstances, finding Bagley's amended complaint relates back to the filing of the initial complaint "is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski*, 560 U.S. at 550. Therefore, the Court finds that the amended complaint relates back to the filing of the initial complaint, making Bagley's claims against Delgado timely for purposes of the statute of limitations.

## II. Remaining Claims

Delgado also argues that Bagley cannot prevail on his illegal search and denial of medical care claims. Bagley fails to respond to these arguments and so concedes these claims. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). This leaves Bagley's excessive force and failure to intervene claims pending against Delgado, as well as the indemnification claim against the City.

**III.     Sanctions against Bagley's Counsel for Failure to Comply with the Court's Rules**

Before concluding, the Court must address the repeated failure of Bagley's counsel, Jason Epstein, to comply with the Court's rules and standing orders. The Court has the inherent power to impose sanctions for conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."). "[A] district court's inherent power to sanction for violations of the judicial process is permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and 'to deter future parties from trampling upon the integrity of the court.'" *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (quoting *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003)). A Court may exercise its inherent power to impose sanctions "where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Id.* at 793. This power extends to misconduct by a party's lawyers. *Ball v. City of Chicago*, 2 F.3d 752, 758 (7th Cir. 1993). Where the responsibility for the sanctionable conduct rests on the lawyer, "a judge should give serious consideration to punishing the lawyer through a fine, an award of costs and attorney's fees to opposing counsel (the costs and fees to be paid by the plaintiff's lawyer, not the plaintiff) . . . , a citation for contempt, and professional discipline, rather than punishing the plaintiff through dismissal of the suit." *Id.*

Here, the record suggests that Epstein has engaged in bad faith litigation tactics throughout this case. Epstein has repeatedly flaunted the Federal Civil Rules of Procedure, the Northern District of Illinois' Local Rules, and this Court's standing orders. Despite knowing that

9

the City was represented, he began this litigation by serving a subpoena on the Chicago Police Department, a City department. Epstein refused to withdraw the subpoena upon the City's agreement to provide the documents he requested, with such a resolution obtained only after the Court's intervention. Subsequently, Epstein has allowed several filing deadlines to pass, actions with the potential to severely prejudice his client. Epstein took a week to file the amended complaint despite being given leave to file instanter. With respect to the summary judgment briefing, he filed for an extension of time more than two weeks after his response was due. Additionally, his filings have not conformed to the Northern District of Illinois' Local Rules. As the Court noted in its July 24, 2018, Opinion and Order, Bagley's response to the motion to dismiss violated Local Rule 7.1 in both length and format. Epstein also failed to file the response as a separate document on the docket, ignoring the Court's order to that effect.[5] With respect to the summary judgment motion, Epstein refused to participate in formulating the joint statement of undisputed facts. And, like the response to the motion to dismiss, Bagley's response to Defendants' motion for summary judgment violates Local Rule 7.1, running twenty-seven pages long. The response also violates Local Rule 5.2(b)'s requirement of twelve-point font in the text and at least eleven-point font in footnotes, instead using fourteen-point, non-standard, and bolded font in the text and nine-point font in the footnotes.

As the Court's standing order on summary judgment practice emphasizes, "[t]he Local Rules and the Court's procedures are not mere technicalities. Failure to abide by any of them, especially the joint statement requirement, will result in the Court striking briefs, disregarding statements of fact, deeming statements of fact admitted, denying summary judgment, and/or imposing sanctions." Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice,

---

[5] Bagley filed this response and the accompanying exhibits on July 12, 2019, over a year later. *See* Doc. 90.

http://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==; *see Chicago Studio Rental, Incorporated v. Illinois Department of Commerce*, 2019 WL 5198655, at *6-7 (7th Cir. 2019) (affirming this Court's summary judgment case management procedures); *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (same). In its opinion on the motion to dismiss, the Court warned that future violations would be met with sanctions. Doc. 56 at 2 n.2. Despite this warning, Epstein has continued to flaunt the Court's rules and procedures.[6] Local Rules 5.2(d) and 7.1 both provide the Court with authority to strike documents that do not comply with these rules. But the Court does not find this an appropriate remedy where the fault appears to lie with counsel, not Bagley. In such a situation, the Court considers it more appropriate to impose a monetary sanction on Epstein for his repeated failure to comply with the

---

[6] Epstein's conduct is not limited to this case, and prior warnings do not appear to have had any effect on his litigation conduct. The Court has reviewed other cases in this district in which Epstein has an appearance and notes the frequency of his failure to comply with court-ordered deadlines. *See, e.g.*, *Alston v. Deutsch Borse, AG*, 80 F. App'x 517, 518 (7th Cir. 2003) (outlining Epstein's failure to provide timely pleadings and written discovery responses); *Padron v. Wal-Mart Stores, Inc.*, No. 12 C 8089, Doc. 80 (N.D. Ill. July 6, 2016) (outlining plaintiff's failure to file a response to the motion for summary judgment and deeming the defendant's factual assertions admitted); *Wilkins v. Merkle*, No. 13 C 375, Doc. 64 (N.D. Ill. April 1, 2015) (denying plaintiff's motion to reopen discovery, outlining Epstein's failure to comply with deadlines and stating that "[t]he Court does not find the excuses provided by Wilkins' counsel to be reasonable explanations for these repeated instances of delay, especially in light of the immense leniency we have shown him in the past"); *id.*, Doc. 82 (N.D. Ill. July 28, 2015) (ordering Epstein to pay $300 to defense counsel as a sanction for failure to file a timely response to the motion for summary judgment); *Perez v. Lopez*, No. 13 C 4531, Doc. 279 (N.D. Ill. April 19, 2019) (admonishing Epstein for improperly noticing a motion for extension of time before the wrong judge and for requesting an extension five weeks after the expert disclosure was due); *id.*, Doc. 313 (N.D. Ill. July 17, 2019) (ordering plaintiff to pay defendant's reasonable expenses caused by plaintiff's failure to comply with Rule 26(a), explaining that "[t]his sanction is for the needless waste of time and resources incurred by Defendants due to Plaintiff's counsel's disregard of this Court's orders and noncompliance with Rule 26(a)"); *Wilkins v. Nat'l R.R. Passenger Corp.*, No. 13 C 6421, Doc. 56 (N.D. Ill. June 17, 2014) (noting Epstein's "casual and indifferent approach to the case"); *United States v. Epstein*, No. 15 C 8445, Doc. 22 (N.D. Ill. August 26, 2016) (entering a default judgment against Epstein, who represented himself in the case, based on his failure to participate in the proceedings); *Ryan v. City of Chicago*, No. 15 C 9762, Doc. 138 (N.D. Ill. July 26, 2018) (granting summary judgment against Epstein's client where, despite receiving requested and *sua sponte* extensions of time, Epstein did not file a response to the motion for summary judgment); *United States v. Dillard*, No. 19 C 4308, Doc. 10 (N.D. Ill. October 3, 2019) (government's motion to stay briefing where Epstein did not file an amended petition by the ordered date).

Court's rules and procedures and to deter future abuses. Because the Court must provide counsel with notice of its intent to impose sanctions and the opportunity to be heard, *see Johnson v. Cherry*, 422 F.3d 540, 551 (7th Cir. 2005), the Court orders counsel to be prepared to address the identified behavior at the next status hearing.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment [82]. The Court enters judgment for Blackman on the amended complaint and for Delgado on the illegal search and denial of medical care claims (Counts III and IV). The Court dismisses Ortiz without prejudice. The Court provides Bagley's counsel with notice of its intent to impose sanctions for his failure to comply with the Court's rules and procedures and orders him to be prepared to address the issue at the next status hearing.

Dated: October 18, 2019

SARA L. ELLIS
United States District Judge